A. T. FLICKINGER, Appellee, v. C. E. PRICE, Appellant.

Negotiable instruments: JOINT LIABILITY: CONTRIBUTION. Where plaintiff and defendant and another party signed a joint note they all became liable thereon jointly as principals, and as between themselves each was liable for one-third, and was a surety for the others; and when upon renewal of the note defendant, instead of signing the same, agreed in a separate writing that he was liable thereon, his liability being a one-third interest, and thereafter one of the two signers becoming insolvent plaintiff alone signed a renewal, the defendant was not only liable thereon for his one-third, but was also liable for contribution to plaintiff for one-half of the insolvent makers' portion, upon payment of the same by plaintiff.

Same: SURETYSHIP: CONTRIBUTION. Ordinarily the obligation of a co-surety to make contribution is not predicated upon an express contract to that effect, but arises out of the implications of the law looking to an equitable apportionment of the burden of suretyship.

Same: CONTRIBUTION: COLLATERAL AGREEMENT: SUBMISSION OF ISSUE. Plaintiff indorsed upon the back of the matured note, for which he signed the renewal, an admission of defendant's liability for one-third thereof which defendant apparently signed, and in this action to compel defendant to contribute one-half of the insolvent makers' portion of the debt paid by plaintiff an issue was raised concerning defendant's signature to the admission, and the court charged that if he signed the same he would not be liable for contribution. *Held*, that defendant's liability for contribution was not affected by the admission that he owed one-third of the debt; that it constituted

no defense to the action; and that even though he may have been entitled under the evidence to an instruction that the admission was signed by him, the erroneous submission of the question was not prejudicial.

**Same:** DEFENSE: EVIDENCE: SUBMISSION OF ISSUE. Defendant pleaded that plaintiff took up the note signed by himself and the insolvent maker, giving his own note therefor, thereafter paid two-thirds of the interest thereon and thereby became a two-thirds owner in the venture in furtherance of which the note was originally given. There was no direct evidence in support of this defense and the court properly took the issue from the jury.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

SATURDAY, APRIL 11, 1914.

ACTION at law against the defendant as an alleged co-surety, to recover contribution; the plaintiff, as alleged, having paid the principal's debt. Trial to a jury, verdict and judgment for plaintiff, and defendant appeals.—*Affirmed.*

*Joseph R. Reed* and *H. L. Robertson,* for appellant.

*Mayne & Green; Tinley, Mitchell & Pryor,* and *L. N. Flickinger,* for appellee.

EVANS, J.—The history of the transaction between the parties, out of which this controversy has arisen, began on March 29, 1907. The parties hereto and one Hudspeth, together with a fourth party, entered into a joint enterprise in the purchase of a tract of Nebraska land, each party having a one-fourth interest in the purchase. This transaction is known in the record as the "Syndicate land deal." The cost to each party to the enterprise was $1,500. For the purpose of meeting such cost, Price, Flickinger, and Hudspeth borrowed $4,500, and executed their joint promissory note therefor, to the

1. NEGOTIABLE INSTRUMENTS: joint liability: contribution.

Commercial National Bank of Council Bluffs. Price was the cashier of such bank. On September 29, 1907, this note was canceled and surrendered by the execution of a new note in lieu thereof for like amount. The renewal note was signed by Flickinger and Hudspeth alone. In lieu of signing such note, Price executed and delivered to his co-makers the following written agreement:

This agreement witnesseth as follows: Whereas, on September 29, 1907, a certain note for $4,500.00, due six months after date, was executed and delivered to the Commercial National Bank of Council Bluffs, Iowa, for $4,500.00; and, whereas, said note was given for what is called the syndicate land near Stuart, Nebraska, in which Charles E. Price, cashier of the Commercial National Bank of Council Bluffs, Iowa, has an equal interest with James F. Record, R. Hudspeth and A. T. Flickinger; and, whereas, the note of which this is a renewal was signed by Charles E. Price, and represents his interest in the said syndicate land; and, whereas, it is deemed best to have this said note signed only by A. T. Flickinger and R. Hudspeth, for reasons best known to himself: Now, therefore, the said Charles E. Price agrees with the said A. T. Flickinger and R. Hudspeth that he is jointly liable with them on this said note (same being bank number 9484, and for $4,500.00, dated September 29, 1907, and due in six months after date), and executes to the said Flickinger and Hudspeth aforesaid, this agreement to show his liability on said note, same being an undivided one-third (1/3) interest in said note with the said parties aforesaid; this agreement shall also cover any renewals of this said note. Witness my hand at Council Bluffs, Iowa, this 8th day of January, 1908. Chas. E. Price.

The note referred to in the foregoing contract became due March 29, 1908. At that time Hudspeth was insolvent. Flickinger, therefore, took up said note and executed in lieu thereof a note for like amount signed by himself alone. This note was subsequently taken up by Flickinger by the execution of another renewal note, signed by himself alone. This last renewal note was dated January 18, 1909, and was for

the original amount, $4,500. At the time of the execution of the last renewal note, Price admitted his liability for one-third thereof. Such admission was put in writing by Flickinger. Whether it was actually signed by Price is a matter of dispute, which will be referred to in a subsequent paragraph hereof. Price, however, paid on such note the sum of $1,500 and interest. In a suit thereon the payee bank later recovered a judgment against Flickinger for the balance remaining. *Commercial National Bank v. Flickinger,* 145 Iowa, 418. This judgment was fully paid by Flickinger.

Plaintiff's claim that Price was co-surety with him for Hudspeth's share of the debt is predicated upon the written contract above set forth. It is the plaintiff's contention that said contract was the equivalent of a signing of the $4,500 note by Price, and that his liability arising therefrom is precisely the same as it would have been if he had signed the renewal note as he had signed the original note.. On the other hand, it is the contention of the defendant that the contract set forth expressly limited his liability to one-third of the amount of the note, and that he did not by such contract assume to become surety for the other parties. The trial court held with the plaintiff's contention, and the defendant complains that the trial court thereby wholly ignored that provision of the contract which limited the defendant's liability to one-third of such note. It is undisputed that the defendant received the benefit of one-third of the consideration, and he has never denied his liability for one-third thereof as a principal. To give effect to defendant's contention would be to hold that his liability on the note was several and separate, and not joint. This would contradict the express provision of the contract "that he is jointly liable with them on this said note." We do not think that there is any inconsistency in the terms of the contract.

Looking for a moment at the note of March 29, 1907, which was signed by the three parties, they were all liable thereon jointly and as principals. As between themselves,

however, each was liable for one-third, and each was surety for the others as to the remaining two-thirds. This was the necessary effect of their joint execution of the note, the consideration for which had been received by them in equal parts. We think the legal effect and the manifest purpose of the contract in question was to maintain the status quo of the parties as made by the joint execution of the first note in the inception of the debt. This statement in the contract that the intent of the agreement was to ''show his liability on said note, same being an undivided one-third interest in said note, with the said parties aforesaid,'' is entirely consistent with defendant's joint liability. As between him and his co-makers, this was his measure of liability on the note. His liability for contribution through the default of one of his co-makers was a contingency which might or might not arise. It had not arisen at the time the contract in question was executed. If it should arise, the cause of action created thereby would be separate and distinct from a cause of action upon the note for which defendant had rendered himself jointly liable. A cause of action for contribution could not arise to the plaintiff except by the payment and satisfaction of the note as to Hudspeth. *Novak v. Dupont,* 112 Iowa, 334.

The obligation of a co-surety to make contribution is not usually predicated upon any express promise to that effect, either written or oral. As between co-sureties, the obligation to make contribution is one of the implications of the law looking to the equitable apportionment of the burden of suretyship. The only function of the contract set out in plaintiff's petition herein was to show that plaintiff and defendant were co-sureties for Hudspeth to the extent of one-third of the debt. The defendant, therefore, having stipulated for a joint liability, he was ''jointly liable'' upon the note. If thereafter Hudspeth became insolvent and unable to meet his share of such note, the obligation to meet the same fell equally upon plaintiff and defendant as co-sureties; and, if plaintiff paid the full amount,

2. SAME: suretyship: contribution.

he was entitled to recover contribution from the defendant. The trial court, therefore, properly construed the above contract.

II. As one defense to the action, the defendant pleaded a new contract by the plaintiff and defendant, entered into in writing on January 18 or 19, 1909. This alleged contract was entered into at the time of the giving of the last renewal note of January 18, 1909. It was written upon the back of the previous note, at the time of its cancellation. The following was the writing entered on the back thereof: "1—19—09, that C. E. Price admits his liability on a renewal of this note to amount of $1,500 and interest, this date. C. E. Price." The canceled note upon the back of which this contract was written was the note already referred to as being dated March 29, 1908, and was the note which was signed by the plaintiff alone, and which had been given to take up the former note signed by plaintiff and Hudspeth. The writing is conceded to be in the handwriting of the plaintiff. The surrendered note was in his possession. The signature is conceded to be that of the defendant, Price. Price pleaded this writing as a contract, and set the same up as a complete defense to plaintiff's cause of action. The plaintiff contended, however, that the above writing was a mere private memorandum on his own part, and denied that defendant's signature was ever attached thereto with his knowledge. He contended, in effect, that defendant's signature must have been attached at some subsequent time after he had relinquished possession of the paper for use in some previous suit. His argument is therefore that the writing did not amount to a contract because not signed by Price. The contention is not persuasive to us. The writing purports to be an admission by the defendant, Price. It appears to have contemplated his signature thereto. Being concededly written by the plaintiff, and having remained in his possession for an indefinite period, the plaintiff's denial of the

3. SAME: contribution: collateral agreement: submission of issue.

defendant's signature presents a remarkable situation, and is open at least to grave doubt. The position of the defendant at this point is strengthened by the further fact that underneath the signature of Price a further memorandum was written, and is conceded to be in the handwriting of the plaintiff, as follows: "1—18—09. This note renewed by me this date for $4,500 and $171 interest, due to this date. The interest Price assumes is his interest on this note, same being a one-third interest in same, renewal is for 6 months, interest 7 per cent."

The trial court submitted this question to the jury, with an instruction to the effect that if they found that Price did sign the writing in question, a verdict should be rendered for the defendant, and, if not, that a verdict should be rendered for the plaintiff. The appellant complains of this instruction, and contends with much force that the signature of the defendant to the writing in question was so manifest and so conclusively proved that the question ought not to have been submitted at all. The jury having found against the defendant at this point, it is urged by him that the verdict should have been set aside as contrary to the evidence. If the case could properly be made to turn on this question as submitted to the jury, we should give more consideration to appellant's specific complaint in relation thereto. It is manifest to us, however, that this branch of the case was tried and submitted upon an incorrect theory in a legal sense, and that both parties to the case were, in large measure, responsible for such error. The defendant contended that the effect of this new contract above set out was to limit the liability of the defendant to the sum of $1,500 on the new note that day executed. The defendant having subsequently paid $1,500 on such note, he contended that he was thereby fully discharged from further obligation thereon. This defense, thus set up by the defendant, was met by the plaintiff simply with a denial of the signature of the defendant to the contract thus set up. Hence the submission by the court of the issue thus made by the

parties. Careful analysis of the contract set up by the defend-
ant as a defense renders it clear, however, that it presented no
legal defense to plaintiff's cause of action. Whether the de-
fendant signed it, therefore, was not a decisive question. As-
suming the fact of the execution of the writing as contended
for by the defendant, there was nothing in its terms which
negatived the pre-existing obligation of the defendant to the
plaintiff to make contribution for plaintiff's payment of
Hudspeth's debt. When did the obligation of the defendant,
if any, to make contribution to the plaintiff as a co-surety,
arise? Manifestly, on March 29, 1908. This is the date on
which Hudspeth as an insolvent defaulted, and the plaintiff
took up his canceled note. *Novak v. Dupont, supra.*

It was entirely immaterial whether the plaintiff responded
to his suretyship by the payment of currency or by the execu-
tion of his own note. From that date Hudspeth was released
from his liability on the note previously executed by him,
and became thereby indebted to the plaintiff, as a principal
whose debt had been paid by his surety. Necessarily the de-
fendant's obligation as co-surety arose at the same time. The
liability of Hudspeth to the plaintiff in such a case was not
expressed by any note or formal promise to pay. The plain-
tiff would have been entitled to sue, and take judgment
against Hudspeth. His cause of action, however, would be
based, not upon a note, but upon the fact of his payment of
Hudspeth's previous debt under the circumstances shown.
In like manner the liability of the defendant to make contribu-
tion as a co-surety was not expressed by any express promise
to pay as hereinbefore indicated. A suit for contribution
would not be a suit upon any note, either the canceled note
or a subsequent renewal. As indicated in the previous para-
graph, such liability rests upon legal implication, and is neces-
sarily founded upon the fact of co-suretyship and the fact
that the plaintiff as surety has been compelled to pay the debt
of the principal. The contract pleaded by defendant does not
in terms contradict this fact. Nor does it purport to deal

therewith in any manner. It only purports to measure the liability of the defendant *on the note* of January 18, 1909. It is not inconsistent in a legal sense with defendant's alleged pre-existing liability for contribution. Defendant's liability, if any, for such contribution lay quite outside of the note of January 18, 1909. The contract pleaded by the defendant inured to the benefit of the holder of the note of January 18, 1909, as well as to the plaintiff. It could have been enforced by the holder of the note. But the pre-existing liability of the defendant to the plaintiff for contribution did not inure to the benefit of the holder of the note. It could not have been enforced by the holder of the note as such. This was a liability to plaintiff alone, and was not affected in a legal sense by the fact that the defendant admitted his liability as principal for one-third of the last renewal note. To put it in briefly, the pre-existing obligation of the defendant to make contribution to the plaintiff as co-surety was not a liability upon the note of January 18, 1909, nor upon the preceding note of March 29, 1908.

It is urged that the effect of this writing was to show that plaintiff was liable for *two-thirds* of the last renewal note. Granted. For that very reason, he is deemed to have paid Hudspeth's debt, and thereby to have become entitled to contribution from the defendant. We do not overlook the significance of the above writing as a circumstance of great weight bearing upon a question of fact which will be referred to in a later paragraph.

All that we hold here is that the contract relied on by the defendant as a complete defense is in a legal sense not inconsistent with defendant's pre-existing liability to the plaintiff for contribution. It is manifest, therefore, that the defendant was not entitled to the submission of this defense as such. Upon this issue the plaintiff was entitled to a directed verdict, although he did not ask it. Therefore, though the issue was erroneously submitted, it could not be prejudicial to the defendant. Even though we should find with the de-

fendant on the issue of fact-as to the signature, we would not thereby be warranted in ordering a new trial, the fact thus found being insufficient to save the defense. In other words the defendant was not entitled to have such defense submitted at all. He is therefore in no position to complain of particular errors in the method of submission, such errors being necessarily nonprejudicial. The plaintiff as *appellee* is under no burden here to show appropriate objection or exception on his own part. If he had been beaten below, a very different situation would be presented in that respect.

III. The defendant pleaded as a defense that prior to March 29, 1908, when plaintiff took up the joint note of himself and Hudspeth and gave his own note in lieu thereof, the plaintiff had acquired Hudspeth's interest in the "syndicate land," and had undertaken to pay Hudspeth's obligation therefor, and that Hudspeth had no further interest in the enterprise or in the $1,500 indebtedness, but that plaintiff became thereby liable as principal for two-thirds of the $4,500 note. No direct evidence was introduced in support of this defense, and the trial court withdrew the same from the consideration of the jury. There was evidence that at all times after March 29, 1908, the plaintiff paid two-thirds of the interest upon the $4,500 note and the defendant one-third thereof. It does not appear that any demand for contribution had ever been made by plaintiff against the defendant at any time prior to the writing set forth in the preceding division thereof, nor that there was any claim for contribution made at that time. Price as cashier of the Commercial National Bank had insisted upon plaintiff's taking up his note of March 29, 1908, and giving a new note therefor, and this was done on January 18, 1909. The fact that such note should be renewed and that the writing referred to should be made as a purported admission of the defendant, and that no claim for contribution should be made by the plaintiff at that time, was a circumstance of substantial significance, and entitled

4. SAME: defenses: evidence: submission of issue.

to great weight as bearing upon the question whether the plaintiff had assumed Hudspeth's debt in the acquisition of Hudspeth's title. For such purpose, however, such evidence was circumstantial and corroborative only, and was not of itself sufficient proof of such alleged fact. If there had been other independent evidence of such fact, the circumstances referred to would be of great corroborative importance. There was, however, no other evidence to that effect. On the contrary, it appeared on behalf of plaintiff that he had not acquired the Hudspeth share from Hudspeth, but from one Pierce, his grantee, and that he had paid Pierce therefor by the cancellation of an indebtedness held by him against Pierce. We think, therefore, that the trial court properly withdrew this defense from the consideration of the jury, and the appellant does not very earnestly contend otherwise. There was some testimony on behalf of the plaintiff to the effect that Pierce had agreed with Hudspeth to pay Hudspeth's share of the note in question, and that Pierce had paid the same to the payee bank, but that the defendant had diverted the payment to other indebtedness. Manifestly if all this were assumed as true, it might be fatal to the plaintiff. Upon such a state of facts, there was no default by Hudspeth, and he would not be liable for further payment, and therefore would not be liable to the plaintiff as his surety. Unless Hudspeth was liable as principal, there could be no liability for contribution on the part of the defendant as a co-surety. On the other hand, however, if defendant diverted Hudspeth's and Pierce's money to the payment of other indebtedness, he could be rendered liable on that ground, not for the contribution of one-half, but for the full amount thus diverted. The parties have not made an issue at this point, and we have no need to give it further consideration. Upon a consideration of the whole case, our conclusion is that the plaintiff was entitled to a directed verdict. The judgment below is therefore—*Affirmed.*

LADD, C. J., and WEAVER and PRESTON, JJ., concurring.